NANCY S. ESTAY
v.
DALE J. ESTAY.
No. 2009 CU 1274.
Court of Appeals of Louisiana, First Circuit.
October 23, 2009.
Not Designated for Publication
STEVEN F. GRIFFITH, SR., Attorney for Plaintiff-Appellant Nancy S. Estay.
TIMOTHY S. MARCEL, Attorney for Defendant-Appellee Dale J. Estay.
Before: CARTER, C.J., GUIDRY, and PETTIGREW, JJ.
PETTIGREW, J.
In this custody proceeding, the mother appeals from a judgment naming the father as the domiciliary parent of their minor child and dismissing her rule for contempt for failure to pay child support. For the reasons that follow, we affirm.
Dale J. Estay and Nancy S. Estay are the parents of the minor child, Dylan J. Estay, born October 2, 1995. On May 3, 2000, judgment was rendered by the Twenty-Ninth Judicial District Court wherein the parties were granted joint custody of Dylan. Nancy was designated as domiciliary parent, with Dale granted summer visitation as well as other specific visitation periods. The court ordered Dale to pay Nancy child support in the amount of $75.00 per month, but suspended his obligation during the six weeks of summer visitation when he would have Dylan with him.[1] The May 3, 2000 judgment was made executory in the Twenty-Second Judicial District Court on August 14,2007.
On April 11, 2008, Dale filed a motion for change of custody, requesting that he be named primary custodial parent of Dylan and that his child support obligation be terminated. Nancy opposed the motion and filed a rule for contempt against Dale for failure to pay child support, alleging that he was $5,525.00 in arrears at the time.
On June 9, 2008, a social worker for the Twenty-Second Judicial District Court conducted a conference with the parties, interviewing Dale, Nancy, and Dylan. Based on her interviews, the court social worker recommended that Dale be designated as Dylan's domiciliary parent; that Nancy have custody every other weekend during the school year; that Nancy not consume alcohol during her visitation; and that Nancy receive individual counseling to address her questionable parenting practices. Thereafter, on August 20, 2008, a hearing officer for the Twenty-Second Judicial District Court conducted a conference on the issue of child support and recommended that Nancy pay child support to Dale in the amount of $233.00 per month beginning upon transfer of physical custody of Dylan to Dale and that arrears are owed by Dale to Nancy in the amount of $5,375.00, but that an off-set should be determined in an amount equal to the obligation owed by Nancy to Dale.
Nancy subsequently filed a motion to appoint a custody evaluator, which was granted by the trial court on September 10, 2008. The trial court appointed Victoria Witt, a clinical/medical psychologist, to conduct the evaluation. Dr. Witt completed her evaluation and submitted a custody evaluation report on December 26, 2008, with the following recommendation:
He [Dylan] was reportedly clear in telling the court's social workers that he wants to live with his father. His memo redacting that preference was written after discussion with his mother about his beliefs (e.g., concerns about her drinking, her calling him stupid) being in error. In other words, his memo was possibly written with persuasion on her part. Losing custody is a serious issue and a parent who truly loves her child may experience considerable pain, depression, anxiety, guilt, and trauma. However, this report is not about the effect of losing custody but about what is best for Dylan. At this juncture in his life, and based on the facts outlined above, which in turn are based upon extensive interviewing, Dylan's preference to live with his father is considered worthy of the court's attention. Given that the mother works a part-time job and only during the school year, Dylan could spend his 6 weeks of summer vacation with his mother and she would have time to fully engage with him without the distraction of work. Given that the father does not work due to his disability, that the father's preferred activities are activities which Dylan also enjoys, the father has ample time to be a full-time father, particularly during the school year. Given the father-son relationship and the psychological needs of a son in the early stages of puberty, Dylan will be psychologically benefitted from the full-time relationship with his father.
A trial on the merits of Dale's motion to change custody and Nancy's rule for contempt was held on March 3, 2009, at which time the trial court heard testimony from the parties and accepted various documents into evidence. In a judgment rendered March 3, 2009, and signed March 6, 2009, the trial court granted Dale's motion to change custody, granting joint custody of Dylan to the parties with Dale designated as domiciliary parent and Nancy granted visitation in accordance with the custody implementation plan ordered by the court. The court further ordered that Nancy pay Dale $233.00 in monthly child support effective March 3, 2009. Concerning Nancy's rule for contempt, the court denied same, finding there were no child support arrears due Nancy from Dale. It is from this judgment that Nancy has appealed, assigning the following specifications of error:
I. The lower court erred when it failed to apply the Bergeron standard and immediately transferred the domiciliary status of the child from the mother (who had raised the child for the previous eight years with little or no help from the father) to the father.
II. The lower court further erred when it dismissed the arrearage rule filed by the mother and misinterpreted the clear language of the judgment from St. Charles Parish, thus canceling any arrearages owed by the father to the mother.

BERGERON STANDARD
Each child custody case must be viewed in light of its own particular set of facts and circumstances. Major v. Major, 2002-2131, p. 4 (La. App. 1 Cir. 2/14/03), 849 So.2d 547, 550. The paramount consideration in any determination of child custody is the best interest of the child. Evans v. Lungrin, 97-0541, 97-0577, p. 12 (La. 2/6/98), 708 So.2d 731, 738; La. Civ. Code art. 131. The trial court is in the best position to ascertain the best interests of the child given each unique set of circumstances. Accordingly, a trial court's determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Major, 2002-2131 at 4, 849 So.2d at 550.
The trial court's determinations in this case were based heavily on factual findings. It is well settled that an appellate court cannot set aside a trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). If the court's factual findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La. 1993).
After a considered decree of custody has been rendered by the court, the proponent of change bears the heavy burden of proving that a change of circumstances has occurred, such that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree, or that harm likely caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La. 1986); Perry v. Monistere, XXXX-XXXX, XXXX-XXXX, pp. 4-5 (La. App. 1 Cir. 12/23/08), 4 So.3d 850, 853.
Ruling from the bench in the instant case, the trial court noted that it was required to follow the Bergeron standard as there was a considered decree before it. In reaching its conclusion regarding the best interest of the child, the trial court referred to the custody evaluation by Dr. Witt, as well as the factors set forth in La. Civ. Code article 134 to be considered in determining a child's best interest. The court went through each of the factors, as had Dr. Witt in her report, and clearly considered and weighed each factor. The trial court stated it was in agreement with Dr. Witt's evaluation, which concluded that it was in Dylan's best interest that Dale be named domiciliary parent. In reaching that conclusion. Dr. Witt detailed each of the twelve factors set forth in Article 134 and set forth the pertinent facts gleaned from her interviews during the evaluation process. Those facts were also adduced at trial through the testimonial and documentary evidence.[2]
After considering the evidence before it, the trial court concluded that it was in Dylan's best interest that domiciliary custody be awarded to Dale. The trial court noted as follows in its reasons for judgment:
That all being said, I find that the standard of Bergeron has been met, and I find that by clear and convincing evidence, including those factors that the Court just went through, the entire evidence, the opinion of Dr. Witt and the testimony of the parties, that the harm likely to be caused by any change of environment [for] the child [from] the mother's to the father's household is substantially outweighed by its advantages to this child at this point in his life. And, therefore, the Court will continue joint custody with the parents; however, the Court will change the primary domicile of the child to that of the father's household, and that is effective as of this weekend.
Considering our review of the record as a whole, the unique facts of this case, and Dylan's best interest, we find that the trial court did not abuse its discretion in awarding domiciliary custody to Dale.

CHILD SUPPORT ARREARS AND RULE FOR CONTEMPT
With regard to the alleged child support arrears and rule for contempt filed by Nancy against Dale, the trial court found that the parties had entered into an agreement to modify the child support obligation to account for periods where Dale was exercising custody of Dylan. Thus, the trial court found there were no child support arrears due, and there was no finding of contempt. The trial court noted as follows:
As far as the contempt on the past due child support, the judgment from St. Charles Parish was not very clear as far as this Court is concerned, and sometimes our judgments aren't. ...
This one in St. Charles said that during the period of time in the summertime that the father had custody of the child for those six weeks that he didn't have to pay child support. So we know that the $75 that he was to pay in child support wasn't due for those periods of time.
However the $600 per month, which if you multiply that times a month and a half and sometimes two months that the father would have the child during the summer would amount to 900 or more dollars a summer that the mother received for the minor child.
And whether she was paying the lights or paying the rent, or whatever she was doing with it, it's obvious to me that the Court in St. Charles Parish couldn't have meant that she was to receive that and not have helped support this child at all when he was with the father of the child and then come back in later and want him to pay $75 a month for the rest of the months.
If you multiply the $900 times the amount of years, it more than makes up for the amount of $75 a month that the father should have been paying the mother. And I find that's a wash, and I don't find that there's any arrears due at all on child support to the mother.
As far as contempt and the mother's rule for contempt against the father, I find it rather disingenuous for her to allege that she meant all these years to come in and seek child support from him. They really didn't have an agreement, that it was a trade-off, and it just so happened when he asked for custody that the thought first occurred to her that she needed to come ask for child support. I don't find that the father is in contempt.
I think if the mother thought he was in contempt with the acrimony between these two parties that she would have filed a long time ago against Mr. Estay.
Based on our review of the record as a whole, we find no manifest error in these factual findings.

DECREE
Having reviewed the record before us and the trial court's reasons for judgment, we find the trial court did not abuse its discretion in granting Dale's motion to change custody, awarding joint custody to the parties, and designating Dale as the domiciliary parent of Dylan. We further find no manifest error in the trial court's judgment denying Nancy's rule for contempt against Dale for failure to pay child support or its finding that there were no child support arrears due from Dale to Nancy. Accordingly, we issue this memorandum opinion affirming the trial court's judgment in compliance with Uniform Rules-Courts of Appeal, Rule 2-16.IB. All costs associated with this appeal are assessed against Nancy S. Estay.
AFFIRMED.
NOTES
[1] According to the record, at the time this judgment was rendered, Dale was eligible for Social Security Disability ("SSI") benefits, which in turn made Dylan eligible to receive dependant benefits. There is some discrepancy in the amount of SSI benefits Nancy actually received. Nancy reported on an August 20, 2008 Intake Questionnaire that she began receiving monthly SSI benefits in Dylan's name in March 2000 in the amount of $643.00. However, during her testimony at the March 3, 2009 hearing, Nancy indicated that she started receiving monthly SSI benefits in May 2000 in the amount of $515.00 and that the amount changed every year. At the time of the March 3, 2009 hearing, Nancy stated she was receiving a $608.00 monthly check representing SSI benefits in Dylan's name.
[2] In particular, Dr. Witt testified at trial that Dylan was not happy with his current living situation and was "far happier [when] visiting at his father's house." When asked if continuing the present custodial arrangement could be harmful to Dylan, Dr. Witt responded as follows:

Okay. The short version is yes. I guess the foundation of my evaluation, the primary concern is Dylan's happiness and psychological well-being. And what I clearly see is a child who's not happy, who is sad, who is feeling a lot of guilt about what's going on, who's feeling a lot of conflict, who desperately wants to at least try living with his father for one year.
And for a lot of reasons, I think that a change in custody is warranted. Continuing to live with his mother means that Dylan psychologically is going to continue to feel unhappy, sad, possibly depressed.